**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jun 07 2012, 8:47 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**RUTH JOHNSON**
Marion County Public Defender

ATTORNEY FOR APPELLEE:

**JENNY R. BUCHHEIT**
ICE MILLER, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF THE CIVIL COMMITMENT OF: T.K., | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1111-MH-1003 |
| | ) | |
| COMMUNITY HOSPITAL NORTH, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Gerald S. Zore, Judge
Cause No. 49D08-9906-MH-582

**June 7, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Respondent, T.K., appeals the trial court's order to temporarily and involuntarily commit him at the request of Appellee-Petitioner, Community Hospital North (the Hospital).

We dismiss.

## ISSUE

T.K. raises one issue on appeal, which we restate as: Whether the Hospital presented sufficient evidence to establish that T.K. was a danger to himself and others because of his chronic mental illness.

## FACTS AND PROCEDURAL HISTORY

T.K. has a history of mental health treatment. In 2002, during the course of three hospitalizations at the Hospital, T.K. was diagnosed with chronic paranoid schizophrenia and placed on a regular commitment pending transfer to a state hospital. Most recently, T.K. was receiving outpatient psychiatric treatment with the Adult & Child MH Center. At some point, T.K. stopped taking his medication. On October 6, 2011, T.K. called his Adult & Child MH Center psychiatrist and "told her that the – that the—that the dry cunt coalition of Indiana needed to stop harassing [him] and if it didn't, [he] was going to take the lips of her, stretch it over her head, shove it up her ass past her tonsils and clamp her teeth down on 'em." (Transcript pp. 43-44). That same day, the Hospital filed an application for emergency detention of a mentally ill and dangerous person, along with a

physician's statement, alleging that T.K. suffered from a psychiatric disorder which impaired his ability to function, making him a danger to himself or others.

On October 12, 2011, the trial court held a commitment hearing. During the hearing, Dr. Olaniyi Osuntokun (Dr. Osuntokun), the admitting psychiatrist, testified that T.K. endorses "all sorts of conspiracy theories that involve physicians, the police, and the legal system." (Tr. p. 10). He clarified that T.K. believed that the staff at the outpatient facility were giving him medications for the sole purpose of killing him, and as such T.K. felt he was justified in threatening the physician because he thought his life was in danger. Dr. Osuntokun explained that when T.K. was admitted to the hospital, he was very hostile to the point where he was placed in seclusion and received parenteral medication[1] involuntarily for the first forty-eight hours of his commitment. According to Dr. Osuntokun, T.K. lacks insight into his chronic mental illness which affects his ability to seek treatment. Because of his paranoia, T.K. also lost his Medicaid insurance and food stamps; he is currently unemployed and his illness could impede his ability to secure housing. Dr. Osuntokun adamantly testified that T.K. cannot be relied upon to take his medications without supervision. Based on his evaluation of T.K., Dr. Osuntokun concluded that there was a substantial risk that T.K. would harm himself and others and requested the trial court to impose a regular commitment to exceed ninety days if necessary to secure an improvement in T.K.'s situation and to grant the Hospital the right to forcibly medicate him.

---

[1] Parenteral medications are injectable medications that are only administered when hospital staff feel that "there is a substantial threat to the integrity of other people." (Tr. p. 16).

3

T.K. admitted to have placed the phone call and have made the statement to the treating psychiatrist, which he characterized as "more of an insult than a threat." (Tr. p. 44). He explained that he stopped the medications because they made him gain excessive weight and he experienced "sexual side effects." (Tr. p. 38). He testified that he considered the medications to be "communistic in design." (Tr. p. 41). T.K. explained that he stopped Medicaid and medicare because "[i]f [the doctors] cure somebody, if they fix something, they can get paid. [] If they don't, then I don't want them getting paid." (Tr. p. 39).

At the close of the evidence, the trial court found that clear and convincing evidence existed that T.K. suffers from chronic paranoid schizophrenia, may be dangerous to others, and is gravely disabled as statutorily defined. However, instead of the regular commitment requested by the Hospital, the trial court imposed a temporary involuntary commitment not to exceed ninety days. The trial court ordered the commitment to expire on January 10, 2012, unless the Hospital discharged T.K. prior to that date.

T.K. now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

T.K. now contends that the trial court abused its discretion when it found that he was dangerous and gravely disabled and, consequently ordered his temporary involuntary commitment. As pointed out by the Hospital, T.K.'s period of involuntary commitment

4

has already expired; therefore his appeal is moot.[2]  Generally, we dismiss cases that are moot, but may decide moot cases on their merits when they involve questions of great public interest that are likely to recur.  *See G.Q. v. Branum*, 917 N.E.2d 703, 706 (Ind. Ct. App. 2009).  Civil commitments implicate due process protections by the United States Constitution and may raise significant questions about how courts generally treat people based on a few isolated instances of unusual conduct.  *See, e.g., Addington v. Texas*, 441 U.S. 418, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979).

However, T.K. does not contend on appeal that the trial court violated his right to due process or otherwise acted improperly.  He does not argue that the trial court's order, based on Dr. Osuntokun's diagnosis and opinion, is mistaken in interpreting or applying Dr. Osuntokun's opinion.  Rather, he disagrees with Dr. Osuntokun's medical diagnosis and recommended treatment, which included his involuntary commitment at the Hospital.  This specific appellate argument does not constitute a question of great public interest, and therefore, combined with the fact that T.K.'s commitment has already expired, we determine his case to be moot.

## CONCLUSION

Based on the foregoing, we conclude that because T.K.'s period of civil commitment has already expired and his specific appellate challenge does not constitute a question of great public interest.

Dismissed.

---

[2] Due to the timing of the parties' briefing, this case was not assigned to this panel until T.K. had already completed his period of commitment.

NAJAM, J. and DARDEN, J. concur